UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DARRELL VENABLE, *pro se*,                          :
                                                    :
                    Petitioner,                     :           **MEMORANDUM AND ORDER**
                                                    :           05-CV-84 (DLI)
            -against-                               :
                                                    :
JAMES J. WALSH, Warden,                             :
Sullivan Correctional Facility,                     :
                                                    :
                    Respondent.                     :
-------------------------------------------------------x
**DORA L. IRIZARRY, U.S. District Judge:**

In the instant action, petitioner Darrell Venable ("Venable" or "petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court construes the amended petition and supporting memoranda of law as raising numerous claims.[1] For the reasons set forth more fully below, the petition is denied in its entirety.

### BACKGROUND

**I.     The Case Against Petitioner**

On June 15, 1998, Officer Wilfredo Cruz arrived at an apartment located at 35 Nostrand Avenue, Brooklyn, New York, in response to an emergency call to 911. (Tr. 34.)[2] Once inside the apartment, he observed Kinsey M. Brooks lying on the floor in a pool of blood. (Tr. 36.) An ambulance took Brooks to a nearby hospital, where he was pronounced dead on arrival. (Tr. 37-38.) A detective located three discharged bullets. (Tr. 64, 81-82, 89.) Petitioner was identified

---
[1] Petitioner filed the instant *pro se* petition and amended petition seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. As a *pro se* litigant, petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court will interpret the petition and amended petition "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*emphasis omitted*).
[2] "Tr." Refers to the transcript of petitioner's state court trial.

1

by witnesses at the scene as the shooter and later arrested outside of his girlfriend's apartment. Shortly thereafter, a grand jury indicted him, charging him with two counts of Murder in the Second Degree, intentional murder (N.Y. Penal Law § 125.21(1)) and, in the alternative, depraved indifference murder (N.Y. Penal Law § 125.21(2)). Additionally, the indictment charged petitioner with one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03) and one count of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(4)).

The trial court conducted a pre-trial hearing on March 1, 1999. (*See generally* Resp. Ex. A.) Jury selection began on March 17, 1999. Prior to the commencement of *voir dire*, the trial court explained to petitioner that he had the right to be present at sidebar conversations with potential jurors and that he had the ability to waive this right. (Voir Dire Tr. 47-79.) The trial court further explained that if he elected to participate in sidebar conversations, he would be accompanied by two court officers. (Voir Dire Tr. 48.) Petitioner consulted with his attorney and decided to participate in sidebar conversations. (Voir Dire Tr. 48-49.) Petitioner participated in the first sidebar conversation with a potential juror. (Voir Dire Tr. 79.) Immediately thereafter, petitioner indicated that he wanted to waive his right to be present at sidebar conversations. (*Id*.) The trial court rejected petitioner's waiver, indicating that he could not "do it at this point." (*Id*.) Neither petitioner nor his attorney objected as the *voir dire* continued and the court entertained sidebar conversations with 37 jurors, at which point the trial court recessed for lunch. (Voir Dire Tr. 79, 85-123.) During the lunch break, the trial court questioned petitioner as to his decision to waive his right to be present at sidebar conversations with potential jurors, and then granted his request. (Voir Dire Tr. 123-24.) The court then completed *voir dire* and impaneled the jury.

At trial, the prosecution presented several witnesses who testified about the events that led to the shooting, and who were witnesses to the shooting. The prosecution began with Christopher McNeil, who spent most of the day of the shooting with petitioner and the victim and was in the apartment when the victim was shot. The government then sought to present the testimony of Matthew Powell, and Ta-wai Bowles, both of whom also were present at the shooting. Defendant moved to preclude their testimony on the ground that defendant's mother observed that they were present during the final few minutes of Mr. McNeil's testimony. (Tr. 127-28.) The court heard argument on the matter, and denied defense counsel's motion. (Tr. 129-130.) The court indicated that defense counsel could cross the witnesses on the matter.

According to the prosecution's witnesses, petitioner and several other individuals were "playing dice," a form of gambling, outside their apartment complex, located at 35 Nostrand Avenue on the morning of the shooting. (Tr. 98.) The police broke up the game. (Tr. 99.) Petitioner and some of the individuals then entered the apartment to resume their game of dice. (Tr. 100.) Brooks eventually won and petitioner then demanded that Brooks return his money. (Tr. 102-03, 112, 182, 253-54.) Brooks refused and petitioner fired a shot, which missed Brooks. (Tr. 105-06, 112, 182, 254.) Brooks and petitioner began wrestling. (Tr. 107, 183, 256, 285.) A second shot was fired and Brooks staggered towards a couch in the apartment. (Tr. 108, 183, 257.) A third shot was fired as petitioner fled the apartment. (Tr. 109, 183, 257.)

Additionally, the prosecution presented the testimony of several law enforcement officers: Police Officer Wilfredo Cruz (the first police officer to arrive at the crime scene), Detective Victoria Burton (the crime scene investigator), Police Officer Stephen Allegretti (an additional officer assigned to this case), Detective Avery Howard (the detective who located petitioner and participated in his arrest), Dr. Frede Frederick (the medical examiner who

3

conducted the autopsy of the victim), and Detective Steven J. Fiorica (a firearms examiner and ballistics expert).

Defendant did not present a case.

On April 5, 1999, the jury convicted petitioner of Murder in the Second Degree for intentional murder (N.Y. Penal Law § 125.21(1)) and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03). The jury acquitted petitioner of the remaining charges of the indictment. The state trial court sentenced petitioner as a second violent felony offender to concurrent terms of imprisonment of twenty-five years to life for the murder conviction and fifteen years for the weapon possession conviction.

## II. State Court Procedural History

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"). His attorney filed an appeal on his behalf on an unspecified date in April 2003, challenging the conviction on the ground that the court's refusal to accept petitioner's waiver of his right to be present at sidebar conversations during *voir dire* until after the parties met with 38 jurors unfairly prejudiced petitioner (the "*Antommarchi* claim"). Additionally, petitioner filed a *pro se* supplemental brief on October 30, 2003, challenging his conviction on the grounds that: (i) the denial of his right to testify before the grand jury violated due process, (ii) the trial court erred in denying his request to send a second degree manslaughter charge to the jury, given evidence of his intoxication, (iii) the trial court erred in permitting two witnesses to testify even though they had heard a few minutes of testimony of another witness, and (iv) the verdict was against the weight of the evidence. (*See generally* Supp. Pro Se Br.) The Appellate Division denied petitioner's appeal after considering the submissions of counsel and petitioner. *See People v. Venable*, 7 A.D.3d 647 (2d Dep't

2004). The Appellate Division held that: (i) petitioner failed to preserve his *Antommarchi* claim, and that in any event, that claim lacked merit, (ii) petitioner waived any argument premised on his inability to testify before the grand jury, and (iii) the remaining claims lacked merit. On August 16, 2004, the New York State Court of Appeals ("Court of Appeals") denied leave to appeal and affirmed the conviction. *See People v. Venable*, 3 N.Y.3d 682 (2004).

Petitioner then moved to vacate his conviction pursuant to § 440.10 of New York Criminal Procedure Law ("N.Y. C.P.L."), contending that the trial court's error in sending both intentional and depraved indifference murder charges to the jury violated his due process rights as the trial court sent inconsistent charges to the jury. (*See* Pro Se Mot. to Vac.; Pet.'s Ex. C.) The trial court held that this claim was procedurally barred pursuant to N.Y. C.P.L. § 440.10(2)(c), as petitioner failed to raise the claim in his direct appeal and, furthermore, that it lacked merit. *See People v. Venable*, Indict. No. 6296/98 (Sup. Ct. King's Co. Aug. 31, 2004); Pet.'s Appx. 3. The Appellate Division denied leave on December 15, 2004. *See People v. Venable*, No. 2004-08364 (2d Dep't Dec. 15, 2004); Pet.'s Appx. 5.

### III. The Instant Action

On January 7, 2005, petitioner filed the instant action, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See generally* Pet., Docket Entry No. 1.) By way of reference, petitioner raises all of the grounds for appeal asserted in the aforementioned state court proceedings. The parties fully briefed those claims for relief. (*See generally* Def. Opp., Docket Entry No. 6; Pet.'s Rep., Docket Entry No. 8.) Subsequently, petitioner moved to supplement his intentional-depraved indifference murder claim with newly issued case law (*see* Mot. to Am., Docket Entry No. 9), which the court granted (*see* April 5, 2006 Order). Petitioner filed several additional motions.

Petitioner moved to stay the instant action pending resolution of a motion to renew and reargue he had filed in state court pursuant to N.Y. C.P.L. § 2221. (*See* Mot. to Stay, Docket Entry No. 11.) In state court, petitioner sought to renew and reargue an omnibus motion he had filed attacking the indictment as defective for lack of jurisdiction. The trial court denied the petitioner's motion for lack of merit. *See People v. Venable*, Index No. 6296/98 (Sup. Ct. Kings Co. Sept. 27, 2007). Petitioner has not moved for leave to amend the petition to add this claim. However, the court construes the motion to stay as seeking leave to amend and grants leave to amend to add this claim to the petition.

Petitioner moved to amend his petition a second time. (*See* Mot. to Am., Docket Entry No. 14.) In his submission, he indicated that he had recently exhausted a claim in state court that attacked his sentence on the ground that New York's second violent felony offender sentencing scheme violated the right to trial by jury. He provided the court with the state court briefs. The trial court denied petitioner's motion on the merits (*see People v. Venable*, Index No. 6296/98 (Sup. Ct. Kings Co. October 25, 2007) and the Appellate Division denied leave to appeal (*see People v. Venable*, No. 2007-10855 (2d Dep't Feb. 14, 2008) (Florio, J.)). This court granted leave to amend to add this claim to the petition on March 26, 2008.

Finally, petitioner moved for leave to amend his petition to supplement his claim that the verdict was against the weight of the evidence with recent case law. (*See* Mot. to Am., Docket Entry No. 18.) He provided the court with the state court briefs, in which he moved to renew and reargue his pro se appeal. In particular, he moved to supplement his claim that the verdict was against the weight of the evidence with recent case law. The Appellate Division denied leave. *See People v. Venable*, No. 1999-3249 (2d Dep't March 11, 2008). This court amended the petition to include this claim on November 11, 2008.

## DISCUSSION

I. **Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions, when state courts have adjudicated a petitioner's federal claims on the merits. Under the AEDPA standard, which governs review of petitions challenging state convictions filed after 1996, such as this petitioner, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority). An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state court-decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In the past, district courts were required to dismiss a state court prisoner's federal habeas petition if the prisoner failed to exhaust available state remedies as to his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). A claim is considered exhausted, when a state court prisoner presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*). Under the AEDPA, district courts now have the discretion to deny habeas petitions on the merits that contain unexhausted claims—so called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

District courts cannot, however, review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a state court's holding contains a plain statement that a claim is procedurally barred based on a state rule, the federal court may not review it even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989); *accord Fama v. Comm. of Corr. Servs.*, 235 F.3d 804, 811 n.4 (2d Cir. 2000) ("[W]e have held that where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved.").

## II. Application

### A. *Antommarchi* Claim

Petitioner contends that the court's delay in permitting him to waive his *Antommarchi* right until after sidebar conversations with 38 potential jurors concluded unfairly prejudiced him.[3] Respondent contends that this claim is procedurally barred from federal habeas review. The Appellate Division held that petitioner failed to preserve this claim for appellate review as he failed to comply with New York's "contemporaneous objection rule," codified at N.Y. C.P.L. § 470.05(2). *See Venable*, 7 A.D.3d at 647; *see also Glenn v. Bartlett*, 98 F.3d 721, 724 n.2 (2d Cir. 1996) ("[A]n issue is properly preserved for appeal as a matter of law only if the appellant objected on that ground in the trial below."). The Appellate Division further held that "in any event" the claim was "devoid of merit." *See Venable*, 7 A.D.3d at 648.

At the start of *voir dire*, petitioner indicated that he intended to exercise his right to be present at sidebar conversations with potential jurors. (Voir Dire Tr. 48-49.) After the sidebar conversation concluded with the first potential juror, petitioner's counsel informed the court that petitioner wished to waive his right to be present. (Voir Dire Tr. 79.) The trial court noted that petitioner could not waive his right until an appropriate time. (*Id.*) Petitioner's trial counsel did not make any objection to this ruling. Further, petitioner and his trial counsel proceeded with sidebar conversations with an additional thirty-seven potential jurors without any protest. The trial court dismissed the jurors for lunch and then questioned petitioner on his intent to waive his presence at sidebar conversations. The trial court then granted petitioner's request. (Voir Dire Tr. 123-24.)

---

[3] Petitioner raised this argument in the direct appeal filed by his attorney. (*See generally* Pet.'s Ex. A.)

Federal courts look to federal law to determine whether a state procedural rule is an independent and adequate bar to review of a federal question. *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007). It is well-settled that the Appellate Division's holding that petitioner's claim was unpreserved for appellate review constitutes an "independent" ground of decision even though the court also discussed the merits of the underlying claim. *See, e.g.*, *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) ("There is no question that the Appellate Division's explicit invocation of the procedural bar constitutes an 'independent' state ground, even though the court spoke to the merits of [the] claim in an alternative holding.") (citing *Harris*, 489 U.S. at 263, 264 n.10). An independent "state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state"; however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is exorbitant." *Garvey*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).

The Second Circuit has found New York's contemporaneous objection rule to be firmly established and regularly followed by the New York courts. *Garcia*, 188 F.3d at 78-79. Therefore, whether petitioner's claim is procedurally barred by § 470.05(2) turns on whether it would be exorbitant to apply the rule in this particular case. *Garvey*, 485 F.3d at 713-14. In *Lee v. Kemna*, the Supreme Court set forth several guideposts to determine whether the application of a firmly established and regularly followed state procedural rule would be exorbitant:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision;

10

(2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and
(3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate government interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee*, 534 U.S. at 381-85).

Turning to the first *Lee* factor, the trial court clearly could not have relied on petitioner's violation of the contemporaneous objection rule—by definition, such a violation cannot occur until a party reaches the appellate court and attempts to raise an argument that has not been preserved. *See Garvey*, 485 F.3d at 719. This determination does not, however, foreclose the possibility that defense counsel's compliance with the rule might have affected the trial court's decision. Had defense counsel timely objected to petitioner's continued presence at sidebar conversations, it is possible that defense counsel, through argument, might have persuaded the court to reach a different conclusion. *Cotto*, 331 F.3d at 243; *cf. Lee*, 534 U.S. at 381. Accordingly, the first consideration from *Lee* fails to support a finding that the application of § 470.05(2) in petitioner's case was exorbitant.

Regarding the second and third *Lee* factors, the court must consider whether New York's contemporaneous objection rule is firmly established and regularly followed in the particular circumstances of petitioner's case, and whether petitioner "substantially complied" with that rule given the realities of trial. *See Lee*, 534 U.S. at 382; *Cotto*, 331 F.3d at 244. It is well established that New York courts will not review unpreserved claims. *See Garcia*, 188 F.3d at 82. Further, when a defendant makes no objection to the court's ruling, the defendant cannot be said to have substantially complied with § 470.05(2). *Cf. Garvey*, 485 F.3d at 714 (collecting cases). Accordingly, the factors from *Lee* provide no support for finding the

Appellate Division's application of the preservation rule exorbitant. *See Richardson v. Greene*, 497 F.3d 212, 220 (2d Cir. 2007) ("Where the case law interpreting New York's preservation rule in criminal proceedings displays consistent application in a context similar to the one before us, that rule is firmly established, regularly followed, and hence adequate for purposes of the independent and adequate state ground doctrine."). The court holds that New York's preservation rule constituted an adequate ground of decision independent of petitioner's federal claim.

Even when habeas claims are barred by an adequate and independent state ground, a federal court can consider the claim despite the procedural bar if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The only cause for the default here was petitioner's trial counsel's failure to object, and default resulting from inadvertence or negligence is not considered "cause" for a default. *Id.* at 753. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Amadeo v. Zant*, 486 U.S. 214, 222 (1988) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). No such external cause is alleged here. Furthermore, petitioner is unable to overcome the default by claiming a fundamental miscarriage of justice as he failed to put forward any new evidence suggesting that he is innocent of the underlying crimes. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995). Accordingly, petitioner is procedurally barred from federal review of this claim, as the Appellate Division's decision rests upon an adequate and independent state law ground.

Finally, it is of no consequence that the Appellate Division further stated that "in any event" the claim was "devoid of merit." *See Venable*, 7 A.D.3d at 648. This court is barred from reviewing such a claim. *Fama*, 235 F.3d at 811 n.4 ("[W]e have held that where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved.") (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996)).

### B. Depraved Indifference and Intentional Murder

Petitioner contends he was unfairly prejudiced by the trial court's error in sending two inconsistent charges, intentional and depraved indifference murder, to the jury.[4] Respondent contends that this claim is procedurally barred from federal habeas review. The trial court denied petitioner's claim pursuant to N.Y. C.P.L. § 440.10(2)(c) as "procedurally barred from collateral review and without merit" because he failed to raise this claim on direct appeal. *See People v. Venable*, Indict. No. 6296/98 (N.Y. Sup. Ct. Aug. 31, 2004). The Appellate Division denied leave on December 15, 2004. *See People v. Venable*, Indict. No. 6296/98 (N.Y. App. Div. Dec. 15, 2004).

Under New York law, a court must deny a motion to vacate when the factual basis of the claim was known to a defendant at the time of the defendant's direct appeal and the defendant failed to raise that claim. *See* N.Y. C.P.L. § 440.10(2)(c). It is well-settled that federal courts are procedurally barred from reviewing such claims as this state procedural rule serves as an independent and adequate state ground for denying relief. *See Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (holding that defendant "procedurally defaulted" as he had already taken his direct appeal and failed to assert the claim at issue); *Arriaga v. Woods*, 05-

---

[4] Petitioner raised this claim in his *pro se* motion to vacate. (*See* Pro Se Mot. to Vac., Pet.'s Ex. C.)

13

CV-3422 (DGT), 2008 WL 4850200, at *5 (E.D.N.Y. Nov. 6, 2008) ("Petitioner's failure to adequately raise, on direct appeal, the ineffective assistance of counsel claim . . . leaves petitioner with no avenue of relief from the state courts."); *Vilsaint v. Burge*, 03-CV-3653 (CBA), 2007 WL 1074917, at *4-5 (E.D.N.Y. Apr. 5, 2007) (holding that the state court's denial of this claim pursuant to § 440.10(2)(c) "constitutes an independent and adequate state procedural ground and so federal habeas review of it is barred"). The Appellate Division's denial of petitioner's claim as procedurally defaulted constitutes an independent and adequate state procedural ground and there is nothing to indicate that the application of this procedural rule to the instant action is exorbitant. Thus, federal review of this claim is barred. Finally, petitioner made no showing of cause and prejudice or actual innocence. As such, federal review of this claim is unwarranted. *See Coleman*, 501 U.S. at 750.

### C. Right to Testify Before the Grand Jury

Petitioner contends that his due process rights were violated because he was denied the right to appear before the grand jury. (*See* Pet.'s Attach., Supp. Pro Se App. Br. 3-6.) Under New York law, "[w]hen a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf . . . ." N.Y. C.P.L. § 190.50(5)(a). To exercise this statutory, right, the target of a grand jury investigation must provide timely notice to the prosecution. *See id*. The prosecution must adhere to certain procedural requirements to assist the target with exercising that right. N.Y. C.P.L. § 190.50(5)(a), (b). To preserve an appeal for a violation of this right by actions of the prosecution, the target must comply with certain procedural requirements. For example, the target must move to dismiss an indictment

14

obtained in violation of these provisions within five days of his or her arraignment on the indictment; otherwise, the target waives all such challenges. N.Y. C.P.L. § 190.50(5)(c).

The indictment against petitioner was filed on June 26, 1998, and petitioner was arraigned on July 14, 1998. (Resp. Ex. I at 4.) Petitioner, who was represented by counsel, filed a *pro se* motion to dismiss the indictment on this ground on December 30, 1998, long after the five-day deadline had passed. (*Id.*) On appeal, the Appellate Division held that petitioner waived his right to consideration of this claim as he failed to comply with the deadlines for challenging his indictment on this ground. *Venable*, 7 A.D.3d at 648. This well-settled independent and adequate state procedural ground bars federal review of this claim. *See, e.g.*, *Brown v. Henderson*, 88-CV-3264 (MAC), 1989 WL 47700, at *5 (E.D.N.Y. Apr. 28, 1989) (holding that petitioner waived review of his claim pursuant to N.Y. C.P.L. § 190.50(5)). Further, the application of this procedural rule to petitioner was not exorbitant. Thus, federal review of this claim is barred. Finally, petitioner made no showing of cause and prejudice or actual innocence. As such, federal review of this claim is unwarranted. *See Coleman*, 501 U.S. at 750.

Moreover, petitioner does not state a cognizable federal claim. There is no federal constitutional right to a grand jury, or for a defendant to appear before one. *See Torres v. Elcore*, 05-CV-898 (RJA), 2006 WL 3536272, at *5 (W.D.N.Y. Dec. 7, 2006) (citing *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972)). This New York state statutory right is "not cognizable in federal habeas review." *See id*.

### D. Lesser-Included Charges

Petitioner contends that the trial court violated his due process rights by failing to send second-degree manslaughter charges to the jurors. (*See* Pet.'s Attach., Supp. Pro Se

15

App. Br. 15-21.) The Appellate Division disposed of this claim by stating that it was "without merit." *Venable*, 7 A.D.3d at 647. There is no Supreme Court precedent requiring trial courts to submit jury instructions regarding lesser-included offenses in non-capital cases. *See House v. Miller*, 02-CV-5379 (JBW), 2003 WL 23198788, at *16 (E.D.N.Y. Oct. 27, 2003) (holding that the Supreme Court "has expressly left open the question whether due process requires this type of instruction"). Thus, the Appellate Division's denial of petitioner's claim could not have been contrary to, or an unreasonable interpretation of, clearly established federal law. *See Long v. Andrews*, 99-CV-7553 (FB), 2000 WL 1716443, at *3 (E.D.N.Y. Nov. 13, 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000)). In any event, the trial court's refusal to instruct the jury on second-degree manslaughter could not rise to the level of a due process violation because no reasonable view of the evidence would support such a charge in this case. *See Long*, 2000 WL 1716443, at *3.

### E. Witness Testimony – Failure to Preclude

Petitioner contends that the trial court violated his due process rights by permitting two witnesses to testify who were present in the courtroom during a few minutes of the testimony of another witness. (*See* Pet.'s Attach., Supp. Pro Se App. Br. 22-26.) The Appellate Division disposed of this claim by stating that it was "without merit." *Venable*, 7 A.D.3d at 647. As a preliminary matter, there is nothing in the record to suggest that the trial court's decision to permit these two witnesses to testify was improper. The court removed the witnesses from the courtroom within minutes of their entering. The court permitted defense counsel to cross-examine the witnesses on what they heard and saw when in the courtroom. Further, this claim raises no challenge to federal law. Typically, "erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that

the error deprived him of a fundamentally fair trial.'" *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (affirming the denial of a petition) (quoting *Wade v. Mantello*, 333 F.3d 51, 58 (2d Cir. 2003). Petitioner has made no such showing. Thus, there is no cognizable federal claim.

### F. Verdict Against the Weight of Evidence

Petitioner contends that the court should grant relief as the conviction was against the weight of the evidence. (*See* Pet.'s Attach., Supp. Pro Se App. Br. 26-32.) The Appellate Division disposed of this claim by stating that it was "without merit." *Venable*, 7 A.D.3d at 647. It is well-settled that a claim attacking a verdict as being against the weight of the evidence is based purely on state law. *See, e.g.*, *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (holding that federal courts are precluded from reviewing "weight of the evidence" arguments as they are based entirely on state law). Thus, petitioner fails to raise a cognizable federal claim and relief cannot be granted on this ground.

### G. Ineffective Assistance of Counsel

Under the Sixth Amendment, criminal defendants "shall enjoy the right . . . to have the Assistance of Counsel for [their] defence." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The Supreme Court articulated the standards for evaluating whether counsel's representation falls below that contemplated by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a *Strickland* claim, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

17

proceeding would have been different," *id.* at 694. A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." *Id.* Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Generally, "strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable,' though strategic choices 'made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *See Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 107 (E.D.N.Y. 2003) (quoting *Strickland*, 466 U.S. at 690-91).

Petitioner contends that he was denied the effective assistance of counsel as his trial attorney failed to object to certain portions of the prosecutor's opening statements and summation. The portions of the statements excerpted by petitioner clearly demonstrate that his attorney, in fact, did object. A review of the record as a whole reveals the same. Thus, this claim is denied on the merits.

Petitioner also alleges that he was denied effective assistance of counsel as his trial counsel failed to properly impeach a witness. The decision to impeach a witness on a particular set of facts "fall[s] squarely within the ambit of trial strategy, and, if reasonably made, cannot support an ineffective assistance claim." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (internal quotation marks omitted); *Bloomfield v. Senkowski*, 02-CV-6738 (RJD), 2008 WL 2097423, at *9 (E.D.N.Y. May 15, 2008) (denying an ineffective assistance of counsel claim premised on, among other things, a challenge to counsel's cross-examination of a witness). Moreover, the record demonstrates that counsel conducted an extensive cross-examination of each of the witnesses. The court finds nothing deficient about

defense counsel's cross-examinations. The state court did not unreasonably apply federal law in denying this claim.

### H. Defective Indictment

Petitioner contends that the court should grant him habeas relief as the indictment was defective because it failed to specifically recite his name in each count. Petitioner contends that this deficiency renders his indictment jurisdictionally defective. (*See* Mot. to Stay, Docket Entry No. 11.) The trial court denied the motion in its entirety for lack of merit. *See People v. Venable*, Indict. No. 6296/98 (N.Y. Sup. Ct. King's Co. Sept. 24, 2007). This claim fails to state a violation of federal law. It "is well settled that there is no federal constitutional right to indictment by a grand jury in a state criminal prosecution." *See Mills v. Poole*, 06-CV-842 (RJA), 2008 WL 2699394, at *14 (W.D.N.Y. Jun. 30, 2008) (citing *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972)). Indeed, the New York State Court of Appeals has recognized that "[t]he right to indictment by a Grand Jury in New York is dependent solely upon [the] State Constitution . . . ." *People v. Iannone*, 45 N.Y.2d 589, 594 n.3 (1978). Federal habeas relief is not available for violations of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, this claim is denied.

### I. New York's Second Violent Felony Offender Statute

In his amended petition, petitioner contends that the court should grant relief as the trial court's sentencing of him as a second violent felony offender, thereby increasing his sentence, violated his right to a jury trial. The trial court denied petitioner's motion on the merits and the Appellate Division denied leave to appeal. *See People v. Venable*, No. 2007-10855 (2d Dep't Feb. 14, 2008) (Florio, J.). Under the relevant Supreme Court precedent, there is no constitutional violation if a judge increases a sentence on the ground that the

defendant has a prior felony conviction.  *See, e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000).  Thus, the state court's denial of petitioner's claim was not an unreasonable application of federal law.  *See Alexander v. Ercole*, 06-CV-3377 (JG), 2007 WL 922419, at * 7 (E.D.N.Y. Mar. 27, 2007) (denying a claim challenging the validity of New York's persistent violent felony sentencing statute).

## CONCLUSION

For the reasons set forth above, Darrel Venable's petition for a writ of habeas corpus is denied.  Petitioner is further denied a certificate of appealability as he fails to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

SO ORDERED.

DATED:  Brooklyn, New York
        March 19, 2008

                                          /s/
                                    Dora L. Irizarry
                              United States District Judge